The next case is 40 Days for Life v. County of Westchester. Good morning, Your Honor. It's Christopher A. Farrara for the appellants. When the motions panel granted our application for expedited review and directed that this case be heard in tandem with the Vitagliano matter, it did so for a good reason. We believe this is a paradigmatic case for the application of 28 U.S.C. Section 1292. And the reason is that we have here the obverse of the problem of a district judge that issues an injunction and declines to call it such. The problem here is we have a district judge denying injunctive relief and declining to formalize the denial, even in the form of a consent to order that was submitted after the judge indicated that that would be a reasonable approach to the problem. And I think that we have here the practical effect test of Carson and Abbott Plus, because not only do we have the practical effect of the denial of injunctive relief as to the bubble zone issue, but we have the judge saying explicitly and repeatedly that he was not going to change his mind on the decision he had made in Vitagliano, that he was not going to grant an injunction in this scenario, that's a direct quote, and that he has already ruled on, and I'm not going to give you a different ruling in this case than I did in the Vitagliano case. But you brought challenges to seven provisions of the county's recently enacted law, and he said he'd get to your motion, and now he's issued a decision addressing all of those provisions except the one that you noticed an appeal on. Why isn't this a sort of classic case of you're asking us to do piecemeal review of a preliminary injunction motion? Well, the purpose of 1292 is a carve-out from the final judgment rule, which contemplates precisely what would otherwise be a piecemeal appeal. And in every preliminary injunction case, there is the prospect of what you would call a piecemeal appeal, at the preliminary injunction stage, of course, and then at the final merit stage when there could be a second appeal. And the fact that the judge has decided now, finally, on April 24th, the other six challenges, is of no help to us on the challenge against the bubble zone. Even if we prevailed on the other six challenges, that would give us no effectual relief whatsoever against the bubble zone, which stands alone as the most egregious provision in this potpourri of restrictions in Chapter 425 of the laws of Westchester County. And we have the Supreme Court specifically targeting the bubble zone in the Dobbs decision when it discusses the distortions in jurisprudence occasioned by the Rowe decision. But still, apart from the merits, we still really have to get past the jurisdictional question. And what you have is an order that says denying the application for a preliminary injunction and saying that the court will consider the request for preliminary injunctive relief as to all of the challenge provisions later. And Carson asks for both irreparable harm, the effect of a denial of injunction, as well as that the matter not be effectively reviewable after a final PI denial order is entered. Had you not filed a notice of appeal, I would think there's every basis to expect, in light of what the district court did, the order that it did enter, that your challenge as to subsection I would have been acted on in the April order that the district court did enter. And that that would be then subject to appeal. And had you, I mean, it seemed like as though you had timing concerns. You wanted to be among the first out of the gate to bring something, a challenge to subsection I to the Supreme Court. But you didn't move to intervene or otherwise participate as an amicus in the Vitaliano case. Well, the Vitaliano matter was before the same judge. And so an amicus participation would be highly unusual. And furthermore, the standard here is- Well, still, you were on different procedural tracks, weren't you? Yes. And so to the extent you now claim that you didn't have an opportunity to have your views heard, there were mechanisms to deal with that. But none that would produce what we have here, which is the immediate consideration of an issue of ongoing irreparable harm. Because the bubble zone provision is the single most egregious aspect of this whole Chapter 425 ensemble of restrictions on speech. And as the motions panel recognized, this case should- Right, you still have to have jurisdiction. I mean, you have lots of options here. Don't wait on your other challenges. Bring this all together. Give up your other challenges and get a final judgment just on I. I mean, there were lots of options. But we're suggesting to you one of them was not to pursue this appeal when you didn't have a final order yet. Well, under 1292, a final order isn't required. And what we have here is a situation in which the judge said it would be a futile exercise for you to continue litigating the issue of the bubble zone restriction. But then we have the question of whether you satisfy the requirements to get it heard in this posture, and we're suggesting to you that that may not be demonstrated here. Well, I'm not sure what more we would need to satisfy the standard for an immediate interlocutory appeal when the judge essentially says, not essentially, but expressly says, I'm not going to change my mind. You're not getting an injunction. I've already ruled on this. It's exactly the same as Vitagliano, and I'm not going to give you a different ruling in this case than I did in the Vitagliano case. Now, we didn't know then that on April 24th he would decide the other six issues. All we knew was that we had an issue of immediate ongoing irreparable- Are you going to appeal the denial of the other- Yes. Okay. We will. Why should we hear this piecemeal? Because if you were to say, detach this issue now, which has already been fully briefed, it's already been presented to this court for a decision, it's ready for a decision, if you were to attach this and send it back to be reattached to the other issues, you're not promoting judicial economy. We're delaying the decision on an issue which results ongoing irreparable harm. If it's detached and goes back to an ordinary appellate track, you could be talking about six, eight, a year, 18 months before the Volvo Zone issue is resolved, when right now it is fully briefed and presented for the court's consideration. And again, in every case involving preliminary injunctive relief, the fact that there were other pending claims for injunctive relief is no impediment. Both the Volvo case and the build of Buffalo case stand for the proposition, and I'm looking in particular at the Volvo case, that even though the judge has not disposed of all potential claims for injunctive relief, the severe limitation of injunctive relief by the one effective or practical decision triggers an appealable event. And the same is true in build of Buffalo. In build of Buffalo, there were claims against the supervisory officials in the city of Buffalo, including the mayor, and also claims against the line police officers. The claims against the higher-ups were dismissed, and the court in build of Buffalo, which the Volvo case cites, said it's not enough to get effectual relief against the police officers, because what happened here is that when the supervisory officials were let out of the case, there was a contracture of the scope of injunctive relief.  The substantial limitation of available injunctive relief triggered an appealable event, and that's what we have here. And again, we have a motions panel that rightly determined that this case was ripe for consideration in tandem with Vitagliano. And again, it would not serve judicial economy to detach it, send it back to an ordinary appellate track, when it is already fully briefed and ready for presentation to this court, and ultimately would appear at the United States Supreme Court. So I don't see that as a problem of significant procedural consideration here. I think it fits right into what 1292 is all about, immediate emergent relief from the practical effect of denying an injunction against what is easily the most egregious provision of Chapter 425. And since it's fully briefed and ready for a decision, I think judicial economy would indicate that we'd be allowed to remain in this case in tandem with Vitagliano. Thank you. Good morning, Your Honors. My name is John Nona. I'm privileged to serve as Westchester County Attorney and to defend Westchester County on this appeal. I would like to address the procedural issues that Your Honors have raised, but I'd like to start with going right to the heart of the issue here. There's no dispute in this case by the Holinsky appellants or the Vitagliano appellants that Hill is controlling law. Despite the fact that some judges at the Supreme Court level have expressed some doubts about it, it remains controlling law applicable in this court. I don't think the court needs to go any further if it reaches the merits. Now, in their briefs, the appellants have raised issues claiming that Hill has been undermined by Reed and by McCullen v. Copley. We've addressed those in our response. I don't think the court needs to get into those issues unless it wishes to. You think we can address the merits before we deal with our jurisdiction? No, I'm going to go to the jurisdictional issue right now, if I may. And the context of the jurisdictional issue is this. When the Holinsky plaintiffs filed their motion for a conference, filed a pre-motion letter for a conference on a preliminary injunction motion, they said they wanted to attack all aspects of the county law except maybe one or two. So they filed a motion seeking to enjoin all of the sections of the law except one or two sections. What happened was the B. Tagliano decision came down, dismissing the B. Tagliano case, and the Holinsky plaintiffs did not like the idea that B. Tagliano was getting ahead of them at the appellate level on their journey to the Supreme Court. So that's why they then went to Judge Halpern and said, look, we would like you to separate out 425.31i and render that, render a separate decision on that. And they suggested he do that under FRCP 54B. He said he would entertain that. Our position was, Judge, if you believe you could do this, we're not going to object. Judge Halpern decided he could not do that under 54B. He didn't find that there was a reason not to delay. So he entered instead the order that said he found no basis to bifurcate the motion at plaintiff's request. And he would consider plaintiff's request for preliminary injunctive relief as to all the challenge provisions, which was the original request that the Holinsky plaintiffs had made, which was to consider all the sections of the law they were challenging. So we don't see a basis why this order is appealable when it, on its face, did not deny the motion for some, the motion for- So your adversary says that under Carson this was an effective denial and that it's irreparable harm because it involves the First Amendment. And that I think that he's saying that it would not be as the litigation's kind of going on ahead in Vitaliano or I'm not entirely sure I understand that argument. But I think he's saying this is effectively a denial that certainly the district court made very clear what his position on the merits was. That he ruled in Vitaliano and he didn't intend to change his mind on it. So there was no reason to have any hope that there was going to be a different decision should they choose to wait. So why isn't that enough under Carson to go ahead under 1292B? Well, we were looking at Volvo, and Volvo's dismissal was with prejudice. And here he issued an order which indicates he may have reconsidered. He certainly said a lot to the contrary, didn't he? Yeah, and the notice of appeal was taken from statements made in a preliminary conference with the judge. I'm not sure that's a valid basis to appeal. Judges could say things at conferences and sometimes change their minds. But I think it would have been more procedurally correct to await a decision on their original request for preliminary injunction when they made that motion on every other section of the law. There was no reason to enter into a separate decision denying the injunction. When the court would have considered everything together. And the only reason, and they said this on the record at the preliminary conference with the court, with Judge Halpern. They wanted to catch up with Vitagliano. I don't think that's a sufficient reason to bypass normal appellate procedure by wanting to catch up to someone else on their hopeful journey to the Supreme Court. The other issue we've raised, procedural issue, is the standing issue. And we've cited several cases in support of the proposition that you need to allege more than there's a law on the books. And a putative plaintiff says, we plan on violating the law, we may violate the law, and therefore we have standing. I think since Susan B. Anthony, a credible threat of enforcement is necessary beyond- This was a very recent statute though, and prompted by circumstances well known to all of us. With legislative history that suggested the county had every intention of pursuing the law, exactly how it would enforce it and what it would prioritize may not be clear. But I'm not sure there's any basis for thinking, unlike in some other statutes where we've looked at a history of non-enforcement over time, that there's any basis for thinking that someone wouldn't be prosecuted relatively immediately under this. Well, as we read the case law, and I would include Judge Ratchie's decision in Knife Rights, which is an excellent analysis of standing requirements, more is necessary than just the law is there and it may be enforced. No statements were made by the county attorney's office or anyone else that they were now going to strictly enforce this law. And there haven't been any statements made or no efforts to enforce the law. Under the law, counselors can still stand their ground right up to the entrance of a reproductive health care facility, whether it be a crisis pregnancy center or a health center that provides abortions. And hand out literature and speak to people as they walk by, even within inches. So there's plenty of opportunities to exercise First Amendment rights without incurring a violation of the law. Well, that's going to the merits then. I know, and I apologize. On the standing question, I guess I'm with my colleague. I thought we generally presumed that a recently enacted law would be enforced, absent some reason to think otherwise. I don't see why we wouldn't think that Westchester County passed the law for reasons of enforcement. I can understand the position that the court may feel that just because the law's on the books, it may be enforced, it's a recent law. I think there's some countervailing case law the other way as well, that requires more. You're certainly not prepared to say that the county is not planning to enforce the law, this particular provision of law. I cannot say that, honestly, Your Honor. Thank you. Just by way of rebuttal briefly, Your Honors, it isn't just a question of us catching up to get to the Supreme Court. This particular provision, every moment it operates, imposes irreparable harm on our clients, most of whom are associated with 40 Days for Life. Now, 40 Days for Life has a pledge, and the 40 Days for Life Pledge of Peace requires them to obey all existing laws. And because of the operation of this particular law, the key activity at the driveway, at the White Plains facility, and at the entrance in the New Rochelle facility has been suspended by the 40 Days for Life participants. But you still, under Carson, you still have to show it would have been effectively unreviewable had you waited for a recent determination by the district court. And I don't know how you can make that claim plausibly based on how the district court expedited this and has ruled on all of your remaining claims. Well, because under 1292, which is an exception to the final judgment rule, it's of no moment that if we had waited until a final judgment and then taken an appeal, it would have been reviewable. The key policy behind 1292, which is a carve out from the final judgment rule, is to allow immediate recourse to appellate review in cases where irreparable harm is being incurred every moment by the operation of a provision like this one. And that's precisely the point of 1292, to allow us to be here today in tandem with the Vitagliano case. And of course, in Vitagliano, there's no question of appellate jurisdiction because of the 12B6 dismissal. But again, judicial economy- And what is the controlling question of law as to which there is substantial ground for difference of opinion since everyone agrees that Hill controls? I'm sorry, I didn't hear the first part of your question. The rest of 1292B, I'm just looking, it says it has to involve, because we're supposed to construe this narrowly, this is an exception to the final judgment rule, right? Yes. So it says that the order has to involve a controlling question of law as to which there is substantial ground for difference of opinion. Well, there certainly is substantial ground for difference of opinion as to- Not that everyone agrees that Hill controls. Yes, Hill controls, but that doesn't mean that appellate review isn't appropriate when, as is obvious in this case, Hill in particular has been singled out by the United States Supreme Court as a distortion of First Amendment principles. And in fact, in footnote 65 of the Dobbs decision, when it came to discussing the distortion of First Amendment principles, Hill versus Colorado was the only case cited in footnote- I think we're familiar with the commentary, but that's not where we are. We're talking about jurisdiction. Well, we have jurisdiction for the same reason that 1292 was enacted. It's simply a case of preliminary injunctive relief being practically denied by a district judge who declined to formalize his denial. And I should note that the judge also indicated that he thought that our approach was quite reasonable. He said, if you can present me with an order that would get you to the Second Circuit, I see that as entirely reasonable. Why he did not sign the consent to order remains a mystery. That's the problem. He changed his mind. Well- And he could have changed his mind about your arguments with regard to Hill, for all we know. I think it's literally impossible that he could have changed his mind because he had already granted a 12B6 dismissal on this issue, on the merits, precluding any further litigation in our case. And when a judge tells you, I'm not going to give you an injunction, and I'm not going to change my mind, unless you're interested in risking sanctions, you don't file the preliminary injunction motion on that particular issue. You take an appeal, which is what we did. Thank you. Thank you both, and we'll take the matter under advisement.